| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:15CR63AGF(SPM) |
| | ) |
| GEORGE ELI BROWN, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence (Docs. 90 & 91) be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

**IT IS HEREBY ORDERED** that Defendant's Motion for *In Camera* Inspection (Doc. 96) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Disclosure of Identity of Government Informant (Docs. 106 and 109) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for an Extension of Time to file additional pretrial motions (Doc. 105) is **DENIED, as moot.**

**IT IS FINALLY ORDERED** that this case is now ready to be set for trial.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2016.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15 CR 63 AGF(SPM) |
| | ) | |
| GEORGE ELI BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Defendant, George Eli Brown, is charged in an indictment with one count of possession with the intent to distribute methamphetamine (Count 1) and one count of possession with intent to distribute crack cocaine (Count 2). Brown, who is representing himself, initially filed a number of pretrial motions including a motion to compel production of certain documents (Doc. 28); a motion for an unhampered defense, which the undersigned construed as a motion for adequate access to legal resources or, in the alternative, for pretrial release (Doc. 34); and a motion to dismiss the indictment on speedy trial grounds (Doc. 49). On August 25, 2015, the undersigned issued a Memorandum, Order and Report and Recommendation ruling on the foregoing pretrial motions. (Doc. 61). Brown filed objections to the report and recommendation (Doc. 62). Those objections are currently pending. After the undersigned issued her report and recommendation on August 25, 2015, the referral of pretrial matters was terminated. However, on September 28, 2015, the case was re-referred by the Honorable Audrey G. Fleissig for consideration of possible additional pretrial motions. (Doc. 67).

After the matter was re-referred to the undersigned, Brown filed a motion to suppress physical evidence (Docs. 90 & 91); a motion for *in camera* inspection of the identity and conduct of the informant referenced in the search warrant affidavit (Doc. 96); and a motion pursuant to *Rovario v.*

*United States* requesting disclosure of the identity of the government's informant. (Docs. 106 & 109). The attorney for the United States has responded to each of the foregoing motions (Docs. 93, 98, & 113), and Brown has filed replies in further support of his pretrial motions. (Docs. 95, 107 & 114). On February 19, 2016, the undersigned held an evidentiary hearing on Brown's motion to suppress evidence. At the conclusion of the hearing, the undersigned granted Brown's oral motion for the preparation of a transcript of the evidentiary hearing and for time to file a post-hearing brief. The undersigned ordered that any post-hearing brief be filed within fourteen days after the hearing transcript was filed. A transcript of the evidentiary hearing was filed on February 29, 2016, and the parties were ordered to submit any post-hearing brief on or before March 15, 2016. The United States and Brown filed post-hearing briefs on March 15th and March 16th, respectively (Docs. 115 & 116). Thus, the motion to suppress and Brown's other pretrial motions are fully briefed and ready for a ruling.

Based upon the evidence adduced at the hearing on the motion to suppress, as well as a review of the transcript of the hearing in this matter, and the briefs of the parties, the undersigned makes the following findings of fact and conclusions of law:

## I.   FINDINGS OF FACT

### A.  *Detectives Penrod and Rataj*

At the time of the evidentiary hearing, Bobby Penrod had been a detective with the Sikeston Department of Public Safety for about 15 years, and a police officer for approximately 23 years. Over the years, Detective Penrod had extensive training in conducting drug investigations. That training included the ability to recognize illegal drugs, making illegal drugs, and over 40 hours of training at Quantico, Virginia. As of March 2015, Detective Penrod had been involved in over a thousand drug investigations. Detective Penrod had heard of Brown and was generally aware that he had been involved in criminal activity, but did not know the specifics of his criminal history.

At the time of the evidentiary hearing, Chris Rataj was a part-time detective for the Sikeston Department of Public Safety. He retired after 21 years with the Sikeston police department. During his

tenure with Sikeston, Detective Rataj had extensive specialized training for drug investigations including narcotics recognition and learning to use commercially prepared field test kits. Prior to March 2015, Detective Rataj was familiar with Brown as he had investigated Brown in connection with drug trafficking activities dating back to 2004. In 2014, Detective Rataj had conducted narcotics investigations, controlled buys and subsequently cases on Brown. In March 2015, Detective Rataj heard that Brown was back in the drug trade.

### B. Investigation and Arrest of Brown

In mid to late February 2015, Detective Penrod received a call from an informant he had worked with in the past. The informant had proven reliable in the past in that his/her information had assisted with investigations and led to charges. Detective Rataj was not familiar with the informant, had not previously worked with him/her, and never personally spoke with the informant regarding Brown. In the initial call, the informant told Detective Penrod that Brown was keeping a specific quantity of cocaine and methamphetamine in the attic of his residence; that Brown would receive phone calls at his residence and would go and deliver the drugs; or that Brown would sell drugs down on the corner.

After receiving the informant's call, Detective Penrod pulled Brown's information from the Department of Revenue (DOR), including his driver's license photo. Detective Penrod also drove past 704 Matthews, the residence identified by the informant, and saw a car parked there which he traced (through the license plate) back to Brown. He also observed Brown (or an individual who looked like Brown's driver's license photograph) standing in the yard of 704 Matthews.

Before encountering Brown on March 14, 2015, Detective Rataj had seen Brown driving in Sikeston. He checked the status of Brown's driver's license and discovered that Brown did not have a valid driver's license.

On March 14, 2015, Detective Penrod was on patrol with Detective Rataj when the officers saw Brown standing near the intersection of Luther and Osage near the "wine tree" – an area known by both officers as a place for drug trafficking. At that point, both officers were sufficiently familiar with what

Brown looked like and were easily able to identify him. The officers also observed Brown's car parked in the area, although Brown was not driving it at the time. Detective Rataj advised Detective Penrod that he had run a department of motor vehicles record check on Brown about a month prior and believed that Brown did not have a valid driver's license.

Later that evening, the officers saw Brown driving his car away from the wine tree. Although it was getting dark, there was illumination from street lights and the headlights of the police car lit up the cabin of Brown's car as he turned in front of the officers' stopped squad car. As such, the officers could clearly see Brown and determined there was no one else in Brown's vehicle. The officers then attempted to initiate a traffic stop because they suspected Brown was driving without a license. But, when they activated their lights and siren, Brown took off in this car, violating several laws in the process and running several traffic signals. After driving without stopping for three or four blocks, Brown jumped out of the car and took off on foot. Both officers got out the police car and chased Brown on foot.

Brown ran around the back of a building. When Detective Penrod was some six to seven feet behind Brown, he saw Brown throw several plastic bags on the ground. Detective Rataj, who approached Brown from a different direction, also observed Brown throwing items, though he could not see what Brown threw. Detective Rataj then used a taser to apprehend Brown. Based on their training, the officers suspected that Brown had thrown controlled substances while fleeing from police.

After Brown was apprehended, the officers went back to look for what was thrown. They found and examined three plastic bags. Based on training and experience, both officers believed the bags contained marijuana, methamphetamine, and crack cocaine. Detective Rataj further believed the substances were packaged for distribution. Once they were back at the station, Detective Rataj field tested the bagged substances. The tests confirmed that the bagged substances were marijuana, methamphetamines, and cocaine.

### C. Search Warrant for 704 Matthews

Following Brown's arrest, the officers went to 704 Matthews and knocked on the door. They did so based on information previously provided by the confidential informant and based on their personal observations of Brown at that residence. When no one answered, the officers decided to apply for a search warrant. Detective Rataj prepared the search warrant application and affidavit based on his personal knowledge, his review of Brown's criminal history in a police database, and information provided to him from Detective Penrod. Specifically, before the officers applied for the search warrant, Detective Penrod called the confidential informant for "fresher" information about the residence. The informant told Detective Penrod that he/she had been in Brown's residence earlier that day and that he/she had seen a ½ ounce of crack cocaine and some methamphetamine in the residence. Detective Penrod relayed the information to Detective Rataj and advised Detective Rataj that the informant was reliable and had assisted with past investigations. Detective Rataj incorporated that information into the search warrant affidavit.

The search warrant affidavit also attested that (i) Brown was on supervised release for a federal conviction for possession of crack cocaine with intent to distribute; (ii) two weeks prior to the warrant application an informant indicated to police that Brown was selling methamphetamine and cocaine, keeping an ounce of cocaine in the attic of 704 Matthews, taking large orders for drugs and then meeting customers to make the sale, and had a large amount of cash; (iii) on March 14, 2015, Detective Rataj observed Brown at the "wine tree" – a "common place were [sic] illegal drugs are sold" and Brown's car was also parked at the wine tree; (iv) later at about 8:00 P.M. Detective Rataj saw Brown driving on Osage near Alabama street and Detective Rataj knew that Brown did not have a valid driver's license; (v) Brown failed to yield when the officer turned on his emergency lights and siren to stop Brown; (vi) Brown was pursued for about eight blocks; (vii) Brown exited the vehicle and attempted to run; (viii) Brown was chased and Detective Penrod observed Brown throw down three small bags; (ix) in the bags

were cocaine, crack cocaine and marijuana;[1] and (x) after Brown was arrested during the booking process it was discovered that Brown had over $700.00 in small bills which is consistent with selling of illegal drugs. Detective Rataj further attested that the information provided in the warrant affidavit was "based on personal knowledge and best information and belief" and that the facts were "true to the best of his knowledge." *See* Govt. Exh. 1.

Detective Rataj submitted the search warrant application to the prosecuting attorney for approval. After obtaining the prosecutor's approval, Detective Rataj submitted the search warrant application electronically to Judge Scott Horman, who subsequently signed and issued the search warrant.

Once Detective Rataj obtained the signed search warrant from Judge Horman, he executed the search warrant along with other officers. The officers gained entry to 704 Matthews by using the keys taken from the ignition of Brown's car, which he abandoned when he fled on foot from police. According to the search warrant return, officers found and seized three plastic bags containing a leafy green substance; plastic bags containing a crystal like substance, a plastic bag containing a white rock substance, a plastic bag containing an ice like substance, numerous plastic bags with corners removed and a digital scale. *See* Govt. Exh. 1. The substances seized tested positive for cocaine and methamphetamine.

### CONCLUSIONS OF LAW

**I. MOTION TO SUPPRESS EVIDENCE (DOCS. 90 & 91)**

Brown moves to suppress physical evidence, including a key to his residence, drugs and cash seized at the time of his arrest on March 14, 2015. Brown also seeks to suppress drugs and other items seized from his residence at 704 Matthews pursuant to a search warrant that was executed following his arrest. (Docs. 90 & 91). Brown contends his arrest and the search of his residence were unconstitutional

---

[1] The evidence presented at the hearing demonstrates that the substances were actually marijuana, crack-cocaine and methamphetamines.

and not supported by probable cause. Brown further contends the search warrant affidavit failed to establish probable cause because it (i) omitted material information; (ii) misled the issuing judge; (iii) contained conclusory statements about a number of items including the reliability of the informant(s) referenced in the affidavit; and (iv) contained a forged signature.

## A. **Arrest of Brown**

Based on the foregoing facts, the undersigned concludes the arrest of Brown and the seizure of Brown's key, cash, and controlled substances discarded by Brown at the time of his arrest were lawful for several reasons.

### 1. *The detectives had reasonable suspicion to attempt to pull Brown over for driving without a valid license.*

First, the detectives had reasonable suspicion to stop Brown when they saw him driving away from the wine tree. Investigatory stops— i.e., brief seizure by police officers that fall short of traditional arrests—are governed by the Fourth Amendment and are lawful when justified by reasonable articulable suspicion that an individual is engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 27 (1968). Reasonable suspicion is a lesser standard than probable cause; it exists when an officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id.* at 21.

The foregoing factual findings demonstrate that when they saw Brown driving away from the wine tree, Detectives Penrod and Rataj had reasonable articulable suspicion to suspect that criminal activity was afoot – namely, Brown was driving without a valid driver's license and may possibly have been engaging in drug trafficking. Before encountering Brown on March 14, 2015, Detective Rataj had seen Brown driving; he checked the status of Brown's driver's license, and discovered that Brown did not have a valid driver's license. Detective Rataj relayed that information to Detective Penrod. As such, when they saw Brown driving his car away from the wine tree on March 14, 2015, the officers had reasonable suspicion to stop Brown to determine the status of his driver's license.

In addition, when the detectives first encountered Brown on March 14, 2015, Detective Rataj was very familiar with Brown and had investigated him for narcotics trafficking in recent years. Both officers were aware of reports that Brown, who had a criminal history of drug trafficking, was back in the drug trafficking trade. Such reports included the very specific report to Detective Penrod by a known confidential informant that he/she had observed Brown with narcotics in his residence. When the officers first spotted Brown on March 14th, he was standing near the wine tree, an area known to both officers as a drug trafficking area. Brown's proximity to a known drug trafficking area coupled with the informant's tip to Detective Penrod arguably may have supplied sufficient reasonably articulable suspicion of drug trafficking to justify an investigatory stop. Although the officers arguably had sufficient information to, at a minimum, approach and question Brown, they did not attempt to approach Brown until they saw him driving his vehicle and suspected he was doing so without a valid driver's license. For all of these reasons, the detectives' attempted traffic stop of Brown did not run afoul of the Fourth Amendment.

### 2. The detectives had reasonable suspicion, if not probable cause, to stop Brown when he fled from them.

Second, Brown's flight from police supports a finding of probable cause for his arrest. The Supreme Court and the Eighth Circuit have held that unprovoked flight may create a reasonable suspicion in a police officer that criminal activity is afoot and will justify the stop of the suspect. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (holding that unprovoked flight is an act of evasion that is a relevant factor in determining reasonable suspicion); *see also United States v. Benson*, 686 F.3d 498, 502 (8th Cir. 2012) (holding that when police officers ordered a suspect to stop, the suspect's decision to increase his speed and try to evade the officers contributed to a finding of reasonable suspicion); *see also United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (holding that reasonable suspicion was justified when officers witnessed the suspect's flight at the sight of police).

In *United States v. Sledge*, the Eighth Circuit held that a defendant who ran away from a police officer who was trying to detain him, "forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest [the defendant] for obstructing a peace officer, in violation of Neb. Rev. Stat. § 28–906(1), and to search [the defendant] incident to that arrest." *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006). The Nebraska statute relevant in *Sledge* is similar to section 575.150 of the Missouri Revised Statutes (2009), which provides that "A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual . . . the person: (1) Resists the arrest, stop or detention of such person . . . by fleeing from such officer."

Defendant's decision to run away gave the pursuing detectives sufficient probable cause to arrest him and search him. *See Freeman v. Adams,* No. 1:12CV86 SNLJ, 2014 WL 1056760, at *10 (E.D. Mo. Mar. 19, 2014) (holding that the officer had probable cause to arrest plaintiff for resisting a lawful investigatory stop by fleeing in violation of Mo. Rev. Stat. § 575.150). Therefore, the officers' pursuit and subsequent seizure of Defendant did not violate Defendant's Fourth Amendment rights.

### 3. Brown's multiple law violations while fleeing from police gave the detectives probable cause to arrest Brown without a warrant.

The foregoing factual findings also demonstrate that while fleeing from police Brown violated a number of laws in the presence of the officers. The evidence also shows that the detectives observed Brown throwing suspected narcotics to the ground as he fled. "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010). In making this determination, "law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks and citation omitted). "Because probable cause requires only a probability or substantial chance of criminal activity,

rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted); *see also United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008).

When an officer has arrested an individual, "the officer may search the individual's person incident to that arrest and may reach into his pockets." *United States v. Pratt,* 355 F.3d 1119, 1121 (8th Cir. 2004) (citing *United States v. Robinson*, 414 U.S. 218, 226, 236 (1973)). "A search incident to arrest is justified by the concern for officer safety and the need to collect evidence of the offense." *Pratt*, 355 F.3d at 1121.

The facts here justified the warrantless arrest, and thus the search incident to the arrest was lawful. As stated above, at a minimum, the detectives had reasonable suspicion to stop Brown to ask him about the status of his driver's license. Brown's flight to evade the officers, together with his violation of a number of laws in the process of fleeing, supplied additional independent grounds for his seizure. The officers' personal observation of Brown throwing down plastic baggies while in flight supplied yet more grounds for the officers' belief that Brown was committing a crime. Because Brown's arrest was supported by probable cause, the cash and other items discovered on and seized from Brown's person subsequent to his arrest should not be suppressed.

### 4. *Brown's key and the controlled substances thrown by Brown were abandoned property and not the fruit of an unlawful search or seizure.*

Finally, the officers' seizure of Brown's key and the drugs thrown by Brown while fleeing police do not implicate the Fourth Amendment. The warrantless seizure of abandoned property does not violate the Fourth Amendment because individuals who voluntarily abandon property forfeit any expectation of privacy they might have had in that property. *See United States v. Segars*, 31 F.3d 655, 658 (8th Cir. 1994) (citing *Abel v. United States,* 362 U.S. 217, 241 and *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir. 1983)). "In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors:

whether the suspect denied ownership of the property and whether he physically relinquished the property." *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999) (citing *United States v. Landry,* 154 F.3d 897, 899 (8th Cir. 1998)). In addition, "[w]hether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *Id.* (quoting *United States v. Tugwell,* 125 F.3d 600, 602 (8th Cir. 1997)).

The objective facts available to Detectives Penrod and Rataj were that Brown jumped out of his car and left the keys in the ignition and took off running. While running from police, Brown discarded three small plastic bags, and kept running. Based on these objective facts available to the investigating officers, Brown clearly abandoned his keys and the substances in the plastic bags while fleeing from police. A finding that Brown abandoned these items, however, does not end the inquiry. "To fall outside of Fourth Amendment protection, a defendant's abandonment of evidence cannot be the product of unlawful police conduct." *United States v. Koessel,* 706 F.2d 271, 274 (8th Cir. 1983); *see also Segars*, 31 F.3d at 658 (citing *Koessel,* 706 F.2d at 274).

For the reasons previously set out, Brown's flight and abandonment of the key and drugs was not the product of unlawful police conduct. From the moment Detectives Penrod and Rataj attempted to initiate a stop of Brown, they had reasonable articulable suspicion to detain him for questioning in connection with his driver's license and potential drug trafficking. That suspicion was based on a tip given to Detective Penrod by a known informant, Detective Rataj's knowledge of Brown's criminal history, Detective Rataj's own investigation into the status of Brown's driver's license, and the officers' observations of Brown earlier in the day on March 14, 2015. Brown's flight at the sight of police, multiple laws violations while in flight, and the officers' observation of Brown discarding items while running, provided additional and independent basis for police to stop and seize him.

In sum, in light of the foregoing, neither the key left in the ignition of Brown's car nor the drugs Brown discarded while fleeing police was the fruit of an unlawful search or seizure. Brown abandoned those items while running away from Detectives Penrod and Rataj. At the moment Brown discarded

those items, he was not seized and the detectives had reasonable suspicion, if not probable cause, to pursue him.

**B. Search of Brown's Residence**

Based on the foregoing factual findings, the undersigned also concludes the search of Brown's residence and the seizure of controlled substances and paraphernalia associated with drug distribution was lawful for at least two reasons.

*1. The search warrant was supported by probable cause.*

First, the search warrant issued by Judge Horman was supported by probable cause. The Fourth Amendment requires that search warrants be based on probable cause. *United States v. Montes-Medina,* 570 F.3d 1052, 1059 (8th Cir. 2009). Affidavits for search warrants are reviewed using the "totality-of-the-circumstances" analysis. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). The task of the issuing judge is to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for . . . concluding that probable cause existed." *Id.* at 238-39 (internal quotation marks omitted); *see also Massachusetts v. Upton,* 466 U.S. 727, 728 (1984). When the judge relied solely on the affidavit presented to him or her, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Gladney,* 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir. 1982)). Affidavits must be read in "a commonsense and realistic fashion." *United States v. Caldwell,* 864 F.2d 71, 74 (8th Cir. 1988) (citation omitted). "Deference is accorded an issuing [judge's] probable cause determination . . . ." *United States v. Brown,* 584 F.2d 252, 256 (8th Cir. 1978).

Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *United States v. Bieri,*

21 F.3d 811, 815 (8th Cir. 1994); *Gates*, 462 U.S. at 238. "'Probable cause requires only a showing of fair probability, not hard certainties.'" *United States v. Tripp*, 370 F. App'x. 753, 757 (8th Cir. 2010) (quoting *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008)).

"An affidavit based on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.'" *Tripp,* 370 F.App'x at 757 (quoting *Gates,* 462 U.S. at 241-42)). Furthermore, "[w]hen an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *United States v. Revivich*, 793 F.2d 957, 959 (8th Cir. 1986) (citing *Gates*, 462 U.S. at 230, and *United States v. Ross*, 713 F.2d 389, 393 (8th Cir. 1983)); *see also United States v. McAtee*, 481 F.3d 1099, 1102 (8th Cir. 2007). "It is well settled that the statements of a reliable informant can provide, by themselves, a sufficient basis for the issuance of a warrant." *United States v. Pressley*, 978 F.2d 1026, 1027 (8th Cir. 1992) (citing *McCray v. Illinois*, 386 U.S. 300 (1967)).

Under Eighth Circuit precedent, there are several factors the court should consider in determining whether information is reliable. For example, "[a]n informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). Reliability may be found on the basis that past tips have led to seizures of contraband or other evidence. *United States v. Formaro*, 152 F.3d 768, 770 (8th Cir. 1998); *Gladney*, 48 F.3d at 313; *Williams*, 10 F.3d at 594. The Eighth Circuit has also noted that "there are indicia of reliability in 'the richness and detail of a first-hand observation.'" *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quoting *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990); *see also Gates*, 462 U.S. at 234 (finding that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight"); *Williams*, 10 F.3d at 594 (noting that source's

information was timely and "based on the informant's first-hand observations, not merely from rumor or innuendo"). Furthermore, "'[s]tatements against the penal interest of an informant typically carry considerable weight' in establishing reliability." *Buchanan,* 574 F.3d at 561-62 (quoting *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001)). "The circumstances of personal questioning may also enhance reliability and credibility." *Id.* at 562; *see also United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when a law enforcement officer meets personally with the informant to assess his credibility). Finally, "[p]robable cause can be established when information from one informant is consistent with that of a second, independent informant." *Buchanan*, 574 F.3d at 562.

Here, not only did the search warrant affidavit sufficiently demonstrate that the informant had proven reliable in the past, but the affidavit also contained other indicia of reliability. For example, the informant gave specific information about the amount and location of narcotics he/she saw in Brown's residence up to and including the day the search warrant was obtained. In addition, information from the informant was at least partially corroborated by the officers' independent investigation and interactions with Brown on March 14, 2015. The affidavit attests that on March 14, 2015, Detective Rataj observed Brown at the "wine tree" – a "common place were [sic] illegal drugs are sold." *See* Govt. Ex. 1. The affidavit further attests that Brown's car was also parked at the wine tree; later at about 8:00 P.M. Detective Rataj saw Brown driving on Osage near Alabama street and Detective Rataj knew that Brown did not have a valid driver's license. The affidavit attests that Brown failed to yield when the officer turned on his emergency lights and siren to stop Brown; Brown was pursued for about eight blocks; Brown exited the vehicle and attempted to run; Brown was chased and Detective Penrod observed Brown throw down three small bags; in the bags were cocaine, crack cocaine and marijuana;[2] and after

---

[2] The evidence presented at the hearing demonstrates that the substances were actually marijuana, crack-cocaine and methamphetamines.

Brown was arrested during the booking process it was discovered that Brown had over $700.00 in small bills which is consistent with selling of illegal drugs.

The officers' independent corroboration of the informant's statements that Brown was trafficking in cocaine and methamphetamine bolsters the reliability and credibility of the information provided by the informant and the finding of probable cause. Indeed, "an informant who is correct about some things more likely will be correct about critical unverified facts." *Revivich*, 793 F.2d at 960 (citing *Spinelli v. United States*, 393 U.S. 410, 427 (1969)); *Gates* 462 U.S. at 233-34. "Where the informant's information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the findings of probable cause." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992).

In sum, the search warrant affidavit more than amply established the informant's reliability. Based on the totality of the circumstances presented in the search warrant affidavit, Judge Horman had a substantial basis for concluding that probable cause for the search of Brown's residence existed.

### 2. *The good faith exception applies.*

Second, even if the search warrant affidavit somehow fell short of supplying probable cause, the good faith exception under *United States v. Leon*, 468 U.S. 897, 922 (1984), applies. *Leon* held that evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on the search warrant issued by a neutral and detached judge need not be excluded as a matter of law. *Id.* In the absence of an allegation that the issuing judge abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. *Id.* at 926.

Here, Brown has consistently and vigorously attacked the character, credibility, and reliability of an individual he believes to have been the informant referenced in the search warrant affidavit. Both in his motion to suppress and his motions seeking an *in camera* inspection and disclosure of the informant, Brown asserts, among other things, that this individual is a thief, a marijuana user, manufacturer and distributor, a professional burglar and shoplifter, robber, murderer, and that he/she suffers from mental

disorders, is a habitual liar and well known prostitute, child abuser who sells food stamps for money, carries a concealed weapon, files false income tax returns and drives badly. *See* Doc. 90, pp. 17-19; *see also* Docs. 96 & 106. However, nothing in Brown's written submissions even hints that the detectives involved in the preparation of the search warrant -- Detectives Rataj and Penrod – were dishonest in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

In his motion for *in camera* inspection, Brown makes the bald assertion that "police were fully aware" the informant was not credible or reliable on March 14, 2015. Doc. 96, p. 2. However, the only officer Brown identifies as having knowledge of the informant's alleged shenanigans is Officer Kim. According to Brown, Officer Kim conducted a traffic stop of the presumed informant while Brown was a passenger in her car. *See* Doc. 96, pp. 3-4. However, Officer Kim appeared at the evidentiary hearing pursuant to a subpoena and testified under oath that he had no involvement in the preparation of the search warrant at issue in this case. Doc. 110, pp. 12-16.

In sum, even if of all of Brown's assertions about the presumed informant are credited as true, neither Brown's written submissions nor evidence adduced at the hearing provide any basis for concluding that the good faith exception does not apply in this case. The evidence adduced at the hearing made clear that, in preparing the search warrant affidavit, Detective Rataj had no prior knowledge of the informant and relied exclusively on statements from Detective Penrod regarding the informant's reliability. Detective Penrod, in turn, based his statement that the informant was reliable on his past experience with the informant whose information in the past contributed to search warrants and arrests. Brown has not challenged Detective Penrod's statement about past assistance provided by the informant.

In addition, nothing in Brown's submissions or the evidence of record suggests that the issuing judge, Judge Horman, abandoned his detached and neutral role. Although Brown's written submissions make the bald assertion that the search warrant application contained a forged signature, based on

questions Brown asked at the hearing, it appears that the "forged signature" Brown alluded to in his motion was that of Detective Rataj. Specifically, during the hearing, Brown asked Detective Rataj about apparent discrepancies between his signature on the search warrant return and search warrant affidavit. Detective Rataj explained, credibly, that the difference in the appearance of the signatures is the result of one form being signed electronically and the other being signed on paper.

Because Brown's assertions fall far short of asserting either that the issuing judge abandoned his detached and neutral role or that the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause, the good faith exception applies and suppression is inappropriate.

## II. MOTION FOR *IN CAMERA* INSPECTION OF THE IDENTITY AND CONDUCT OF GOVERNMENT'S INFORMANT (DOC. 96)

Brown has filed a motion requesting that the Court conduct an *in camera* inspection of the "identity and conduct" of the informant referenced in the search warrant affidavit. Doc. 96. After a close review of Brown's motion, it appears that the purpose of the requested *in camera* inspection is for the Court to examine, among other things, the informant's character, mental health history, criminal history, and past conduct to determine whether the informant was, in fact, reliable as represented by Detective Rataj in the search warrant affidavit.

Brown offers no legal authority in support of his motion for an *in camera* inspection for the purpose of attacking the informant's reliability, and the Court has found none. Brown's motion for an *in camera* inspection of the identity and conduct of the informant appears to be little more than an attempt to attack the probable cause finding by Judge Horman. As the Eighth Circuit has recognized, there is no requirement for compulsory disclosure of an informant where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. *U.S. v. Bourbon,* 819 F.2d 856, 859 (8th Cir. 1987) (quoting *McCrary v. Illinois,* 386 U.S. 300, 311 (1967)). For the reasons detailed in the preceding sections of this memorandum, the search warrant affidavit adequately established probable cause and

adequately established the reliability of the informant. Specifically, the affidavit established the informant's reliability by referring to the informant's history of investigative cooperation which led to other search warrants and arrests, by the detailed first-hand observations of the informant and by partial corroboration by the officers. As such, there is no legal or factual basis for conducting an *in camera* inspection of the government's informant or to otherwise look beyond the four corners of the search warrant affidavit.

For all of the foregoing reasons, Defendant's motion for *in camera* inspection will be denied.

### III. MOTION FOR DISCLOSURE OF THE GOVERNMENT INFORMANT'S IDENTITY AS A MATERIAL DEFENSE WITNESS (DOCS. 106 & 109)

Brown has also filed a motion based on *Rovario v. United States* requesting disclosure of the informant's identity on the grounds that the informant is a material defense witness. Docs. 106 & 109. For the reasons stated below, Brown's motion will be denied because Brown has failed to demonstrate that the informant is, or could be, a material defense witness.

In *Rovario v. U.S.,* 353 U.S. 53, 60 (1957), the Supreme Court recognized the government's privilege to withhold the identity of informants. This privilege is not absolute. An accused who seeks disclosure of an informant's identity has the burden of showing that the need for disclosure outweighs the government's privilege to withhold the identity of its confidential informants. *U.S. v. Lapsley,* 263 F.3d 839, (8th Cir. 2001). This requirement strikes a balance between the public interest in protecting the source of information and the defendant's right to prepare a defense. *See Rovario,* 353 U.S. at 62.

The defendant satisfies his burden by showing that disclosure is relevant and helpful to his defense or essential to a fair trial. *Lapsley,* 263 F.3d at 841. The defendant "must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.* at 843 (quoting *U.S. v. Harrington,* 951 F.2d 876, 877 (8th Cir. 1991). While there is no litmus test for determining when disclosure is required, the Eighth Circuit has held that "perhaps the most important factor for a court in this circumstance is to consider whether the [informant's] information is material to

the defense." *U.S. v. Lapsley,* 334 F.3d 762, 764 (8th Cir. 2003). The Eighth Circuit has further held that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* When an informant "merely conveys information to the government but neither witnesses nor participates in the offense," disclosure is typically not required. *Id.*

Here, Brown is charged with possession with the intent to distribute cocaine and methamphetamine. As such, evidence that Brown was in possession of distribution quantities of those substances together with other indicia of drug distribution will be central to both the government's case and Brown's defense at trial. Brown contends the informant is material to his defense because the informant may be "ready to come forth with the truth and reveal she placed the drugs in the residence." Doc. 109, p. 2. Alternatively, Brown suggests the informant may, upon examination, confess that she was not in his residence at all and made it all up to frame him. *See id.* Brown's other theories of materiality appear to be a thinly veiled attempt to attack the probable cause finding by Judge Horman. Brown's theories are unavailing.

Brown's theory that the informant will exonerate him either by saying he/she planted the drugs or, alternatively, by saying he/she lied about seeing drugs in Brown's residence is highly improbable and does not rise above "mere speculation" and wishful thinking. Brown's theories are not supported by any evidence proffered in this case. Indeed, Brown's theory that the informant planted the drugs at his home fails to address how he would explain away the drugs officers observed him discarding as they pursued him on foot or the cash they seized from his person following his arrest. Brown's theory that the informant was never in his home and made it all up also fails to address how he would explain the drugs and other paraphernalia seized by police from his residence. Finally, Brown's attempt to use a *Rovario* motion as a means of revisiting Judge Horman's probable cause finding fails for the reasons stated in Section II of this Memorandum.

The evidence before this Court reveals that the informant told Detective Penrod that he/she had

been in Brown's residence at 704 Matthews earlier in the day on March 14th and observed one half ounce of crack cocaine and some methamphetamine at the residence. The informant was not present when the warrant was executed and Brown, who was already in police custody, was also not present. Under these facts, the informant in this case was a "tipster"– i.e., a person who merely conveys information but does not witness or participate in the offense – whose disclosure is not required under *Rovario. See, e.g., U.S. v. Bourbon,* 819 F.2d 856, 860 (8th Cir. 1987) (holding that informant who was admittedly in house of defendant charged with possession with intent to distribute cocaine, not distribution of cocaine, was a tipster where informant personally observed drugs in house but was not present during the execution of the search warrant or seizure of the evidence).

For all of the foregoing reasons, Brown's motion for disclosure of the government's informant will be denied.

## **CONCLUSION**

For all of the foregoing reasons, Brown's motion to suppress should be denied as should Brown's motions for *in camera* inspection and disclosure of the Government's informant.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2016.